Argued and submitted April 8, affirmed November 13, 1991

Michael D. ERNE,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Western Pneumatics, Inc.,
*Respondents.*

(90-AB-1284; CA A66524)

820 P2d 875

Timothy P. Baxter, Eugene, argued the cause and filed the brief for petitioner.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Western Pneumatics, Inc.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

The Employment Appeals Board (EAB) held that, because claimant's discharge was for "misconduct connected with work," he is disqualified from receiving unemployment benefits. ORS 657.176(2)(a); OAR 471-30-038(3). Claimant seeks review, and we affirm.

EAB found:

"(1) Claimant worked as a field apprentice for Western Pneumatics, Inc. from June 29, 1989, until April 12, 1990. (2) Claimant travelled to various locations in a designated company vehicle to install machinery at mills of the employer's clients. (3) Claimant regularly stayed overnight in such locations while installing the machinery. (4) By policy, the employer requires its employees to conduct themselves in a respectable and orderly manner. (5) By policy, the employer did not allow its employees to use intoxicants or drugs while on the job or to use intoxicants or drugs while off the job if such off the job usage affected an employee's ability to perform work. (6) By policy, the employer did not allow its employees to show disrespect for its clients and customers. (7) By policy, the employer did not allow extremes of conduct that could discredit its business reputation. (8) Any violation of the employer's policies could result in discharge. (9) Claimant knew and understood the employer's policies and the personal conduct required of him by the employer.

"(10) On December 29, 1989, claimant failed to report to work when scheduled because he was intoxicated, having overindulged in alcohol the night before. (11) The employer orally counseled claimant about the absence. (12) On March 22, 1990, while on duty, claimant offered drugs to an employee of one of the employer's clients. (13) The employee receiving the offer reported the incident to the client. (14) The employer lost the client as a result of claimant's action. (15) The employer suspended claimant for one week for the incident. (16) As claimant's last chance and as a condition of continuing employment, the employer and claimant agreed claimant would remain drug and alcohol free and not embarrass the employer further. (17) The employer stated and claimant knew a further incident would result in claimant's discharge. (18) On April 12, 1990, claimant was working in a small town in Washington and while off duty became involved in a fight in a restaurant and bar. (19) During the fight, claimant threatened two persons with a gun which he carried on his person. (20) The two persons

threatened were employees of the employer's client where claimant was then working. (21) The client was one of the most important employers in the region. (22) The manager of the restaurant and bar where the incident occurred knew claimant worked for the employer and reported the incident to the employer. (23) The manager of the restaurant and bar told the employer its employees were no longer welcome as patrons. (24) The employer discharged claimant April 12, because claimant's conduct on April 12, 1990, violated the last chance agreement."

EAB concluded that claimant's conduct that prompted his discharge was work-connected. It said:

"On April 12, 1990, claimant threatened two persons with a gun during a fight in a restaurant and bar. Claimant was off duty at the time. The persons threatened worked for the client in which claimant was installing machinery for the employer. The client was one of the most important employers in the area. The manager of the bar and restaurant where the incident occurred knew claimant worked for the employer. The manager closed the bar and restaurant to any of the employer's employees in the future.

"The manager perceived claimant as a representative of the employer and held the employer accountable for claimant's action, as evidenced by the closure of the restaurant and bar to all of the employer's employees. Further, claimant's action in threatening two employees of the employer's client with a gun could likely result in 'an intolerable level of tension, if not downright fear, on the job * * *' so as to create the requisite work-connection. *Muscatell v. Employment Division,* 77 Or App 24, 28, 711 P2d 192 (1985). Because claimant's fighting and threat had an impact on the employer, claimant's conduct was work-connected. *Glide Lumber Products Co. v. Employment Division,* 86 Or App 669, 741 P2d 9[07] (1987)."

■ Claimant argues that EAB's findings do not rationally support its conclusion. He is correct that there must be a rational relationship between the findings and the legal conclusion that an agency reaches. *Pruett v. Employment Division,* 86 Or App 516, 521, 740 P2d 196 (1987). According to claimant, because the conduct occurred off the job site after work hours and did not involve any aspect of claimant's job performance, it was not work-connected. Although we may disagree with an agency's inferences and conclusions, we will

not overturn them so long as the reasoning is not fallacious. *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981).[1]

ORS 657.176(2)(a) provides that an individual is disqualified from receiving unemployment benefits if the discharge was for misconduct connected with work. OAR 471-30-038(3) provides, in part:

> "[M]isconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct."

Under ORS 657.176(2)(a) and OAR 471-30-038(3), off-duty conduct must affect or have a reasonable likelihood of affecting the employee's work or the employer's workplace in order to constitute work-connected misconduct. *Sun Veneer v. Employment Div.,* 105 Or App 198, 804 P2d 1174 (1991). The terms of a last chance agreement cannot alter the statutory eligibility requirements and make what is otherwise non-work-connected misconduct work-connected. However, job descriptions may require certain standards of conduct while the employee is off-duty, depending on the nature of the employer's business. Here, EAB found, and there is substantial evidence to support the finding, that customer relations in towns where employer does business are important to employer's business.

EAB found that claimant's workplace was at the mills of employer's customers and that he regularly stayed

---

[1] The dissent seems to disagree with the inferences that EAB drew from its findings. Claimant does not challenge the findings or the inferences drawn from them; he complains that they do not rationally support EAB's conclusion. In any event, even if we disagreed with the agency's inferences, we will not overturn them so long as there is a reasonable basis for them. In *City of Roseburg,* the court said:

> "The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale. The rationale is reviewed for soundness, not for conformity to judicial preference. Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for 'substantial reason,' *cf. [sic] Springfield Education Assn. v. School Dist.,* 290 Or 217, 228, 621 P2d 547 (1980), and *McCann v. OLCC,* 27 Or App 487, 495, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977)." 292 Or at 271.

overnight in those towns. Because employer's business reputation in those locations was important to employer, its policies regulated off-duty conduct while an employee was there. Employer had lost a customer as a result of claimant's earlier conduct. Employer reiterated its policies through the last chance agreement. EAB found that the incident on April 12 involved threats against employees of employer's customer in the town where claimant was working and that, as a result of his actions, employer's employees could no longer patronize the restaurant and bar in that locale. Those findings rationally support EAB's conclusion that claimant's conduct was non-isolated work-connected misconduct.

Claimant's other arguments do not merit discussion.

Affirmed.

**RIGGS, J.,** dissenting.

I disagree with the majority's view that EAB's findings rationally support its conclusion that claimant's off-duty conduct was work-connected. The incident leading to claimant's discharge occurred off the job site and after hours and was unrelated to claimant's job or to employer's business. Although the incident may have justified employer's discharge of claimant, it does not disqualify him from receiving unemployment benefits, because it was not "misconduct connected with work" under ORS 657.176(2)(a).

First, contrary to the majority's assertion, the last chance agreement does not support the conclusion that claimant's conduct was work-connected. The agreement arose in response to claimant's drug- and alcohol-related conduct. Employer's witness testified that he told claimant that this was his last chance to "stay clean" and that claimant promised not to drink or take drugs. The majority seems to say that employer had some sort of "job description" requiring "certain standards of conduct" while the employee was off-duty. 109 Or App at 633. I find no such "job description" in the record of this case and do not read EAB's opinion to say that it did either. There is no evidence whatever that activities unrelated to drugs or alcohol were part of the agreement. Even if there was, there is no evidence, other than mere speculation, that news of the incident reached employer's

client or that it affected employer's relationship with the client.[1]

Second, the fact that the other persons involved in the fight were employees of employer's client does not, without more, make the conduct work-connected. Despite the majority's speculations, there is no evidence that the dispute was related to claimant's work or that it arose on the job site.[2] Neither is there any evidence that claimant had worked or would be working with those persons on the job site.[3] In fact, the only evidence is that he did not know who they were. The majority says that customer relations between employer and other business clients are important to employer's business. That is self-evident, but there is no evidence cited by EAB or the majority that demonstrates any adverse action taken against employer by employer's customer. Without facts that show a connection to the work, EAB is not entitled to conclude that claimant's conduct would insure "an intolerable level of tension, if not downright fear, on the job."

A general exhortation to conduct oneself in a "respectable and orderly manner" while off-duty cannot, alone, be considered reasonably related to the conduct of employer's business. I would hold that EAB erred in concluding that claimant's off-duty conduct was work-connected, and I therefore dissent.

---

[1] By discussing the last chance agreement, I suggest no agreement with the majority's premises that it is or could be relevant to the disposition of this case. The majority pays lip service to *Sun Veneer v. Employment Div.*, 105 Or App 198, 804 P2d 1174 (1991). However, notwithstanding its contrary protestations, the majority then proceeds to say that employer's policies and the last chance agreement here do precisely what *Sun Veneer* holds that they cannot do: make off-duty misconduct work-connected which would not otherwise be work-connected under the law. Although the majority characterizes the contents of the agreement as a "job description," the inescapable fact is that the agreement simply prohibits claimant from engaging in certain conduct.

[2] We found an off-duty altercation between two employees to be work-connected when the dispute originated in the workplace and the fight occurred immediately adjacent to the employer's premises, immediately after both parties had left work for the day and while they were still wearing their uniforms. *Flaucher v. Employment Division*, 92 Or App 396, 399, 758 P2d 422 (1988).

[3] We have said that EAB would be entitled to conclude that an off-duty altercation between two employees was work-connected when the facts showed that one employee had beaten and robbed a co-worker, because such conduct "insures an intolerable level of tension, if not downright fear, on the job." *Muscatell v. Employment Div.*, 77 Or App 24, 28, 711 P2d 192 (1985).