Submitted on record and brief September 30, 1992, affirmed March 3, 1993

# Larry J. CRANE,
## *Petitioner,*
### *v.*

# EMPLOYMENT DIVISION
## and Western Mobile Homes,
### *Respondents.*

## (92-AB-137; CA A73844)
847 P2d 886

Larry J. Crane, Coos Bay, filed the brief *pro se.*

Charles Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Solicitor General, waived appearance for respondent Employment Division.

No appearance for respondent Western Mobile Homes.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Claimant seeks review of an order of the Employment Appeals Board (EAB) that reversed the referee and denied unemployment benefits. EAB concluded that claimant voluntarily quit his job without good cause. ORS 657.176 (2)(c); OAR 471-30-038(4). We affirm.

EAB found:

"(1) Claimant was employed by Western Mobile Homes from April 30, 1990, until October 4, 1991. (2) He worked as a mobile home salesman and was paid by commissions. His earnings varied greatly, but he averaged $1,800 per month. (3) Claimant quit work because he was dissatisfied with the manner in which the employer computed his earnings. (4) Salespersons were paid 20% of the gross profit on the sale. (5) In calculating the gross profit, the employer deducted from the sale price a 'dealer pack,' a sum which varied according to the size of the sold mobile house, and included delivery and set-up costs. This sum did not equal the actual sales costs; it could have been in excess of or under actual costs, depending on whether the employer incurred additional costs after the calculation of a commission. (6) The employer's method of computation of gross profit for purposes of determining commissions was common in the industry. (7) Commissions were determined in this manner at the time claimant was hired, although he was not initially aware of it. (8) In June, 1991, the company that usually did the delivery and set-up raised its prices. (9) Before June, 1991, the employer charged $3,200 on double-wide home sales and $1,800 on single-wide home sales as a 'pack.' On June 1, 1991, the employer increased the 'dealer pack' by $400 on double-wide sales and $200 on single-wide sales. The increases lowered gross profit and sales persons' commissions.[1] (12) When the increase took effect, claimant confronted the employer in a sales meeting. The employer responded that "there [were] other costs involved" which

---

[1] The referee found that:

"(10) Shortly before he quit, claimant had a large sale of a new trailer that was to be factory delivered.

"(11) When claimant got his commission sheet, he saw that costs included a delivery and set-up charge of $3,600, even though there had been no such charge."

The Board properly deleted those findings, because they were not supported by the record.

necessitated the increase. (13) Claimant quit a short time later. (14) After June 1, 1991, the actual set-up and delivery costs on single-wide mobile homes was $1,100, and $1,265 to $1,870 on double-wide mobile homes. (15) The employer never promised claimant that his commission would be computed based on actual set-up and delivery costs."

EAB denied unemployment benefits to claimant because it concluded that he voluntarily left work without good cause. ORS 657.176(2)(c). On review, we examine the record to determine whether EAB's findings are supported by substantial evidence. *Teamey v. Employment Div.*, 104 Or App 588, 592, 802 P2d 680 (1990); ORS 183.482(8)(c). They are.

■■ Next, we determine whether there is a rational relationship between EAB's findings and its legal conclusions. *Erne v. Employment Div.*, 109 Or App 629, 632, 820 P2d 875 (1991); *City of Grants Pass v. Employment Division*, 94 Or App 328, 331, 765 P2d 237 (1988). Although we may disagree with EAB's conclusions, "we will not overturn them so long as the reasoning is not fallacious." *Erne v. Employment Div., supra*, 109 Or App at 632.

■ ORS 657.176(2)(c) provides that a person is disqualified from receiving benefits if he voluntarily leaves work without good cause. OAR 471-30-038(4) provides:

"Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."

EAB found that claimant quit work because he was unhappy with the way employer computed his earnings. By not using actual set-up and delivery costs in determining the "dealer pack," claimant believed that employer was making excessive deductions from the sale price to reduce gross profit and, thus, commissions. EAB also found, however, that employer never told claimant that the "dealer pack" would be based on actual costs, that the method used by employer in calculating claimant's commission was common in the industry and that the same method had been used the entire year and a half that

claimant had worked for employer. We conclude that those findings rationally support EAB's conclusion that claimant voluntarily left his job without good cause.

Claimant contends that this matter should be remanded for reconsideration, because a letter that he had written that was received into evidence by the referee was not forwarded to EAB on review. OAR 472-10-005(4) provides:

> "When a party files an Application for Review with the EAB within the time provided by law, the Administrator of the Employment Division shall cause the entire record to be certified to the EAB."

In his letter, claimant detailed his objections to the findings made in the administrative decision. The letter's contents basically summarized claimant's testimony at the hearing, and the testimony was before EAB. Although it was undoubtedly error for the letter not to have been forwarded to EAB, the error was harmless. *See Doherty v. Oregon Water Resources Director*, 92 Or App 22, 34, 758 P2d 865 (1988); ORS 183.482(7).[2]

Affirmed.

---

[2] Claimant also assigns error to the failure to forward to EAB a written statement that he filed with the Employment Division on October 22, 1991. That document, however, was not received into evidence and, therefore, was not made a part of the record.