Argued and submitted April 8, reversed and remanded for reconsideration
July 24, 1996

## EMPLOYMENT DEPARTMENT,
*Petitioner,*

*v.*

## Annette E. PIERCY
## and First Interstate Bank,
*Respondents.*

(EAB 95-AB-1268, 95-AB-1406; CA A89606)

920 P2d 1129

Stephen L. Madkour, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance by respondent Annette E. Piercy.

No appearance by respondent First Interstate Bank.

Before Warren, Presiding Judge, and Edmonds and Haselton, Judges.

WARREN, P. J.

## WARREN, P. J.

In this unemployment compensation case, the Employment Department (Department) seeks review of an Employment Appeals Board (EAB) order that awarded claimant benefits because it concluded that claimant had not left work without good cause. ORS 657.176(2)(c). The issue is whether an employee who ceases to perform services for her employer and accepts a severance package that provides her with her regular paycheck and benefits for a number of months is eligible to receive unemployment benefits. We reverse and remand for reconsideration.

The pertinent facts are undisputed. Claimant worked as a teller for employer for 21 years. Near the end of 1994, the employer notified claimant that it was reorganizing and provided claimant with a number of options. At that time, claimant's annual salary was $21,444. The employer offered claimant the option of continuing her employment at that branch but at a reduced number of hours per week. Under that option, claimant would receive 70 percent of her $21,444 salary. In the alternative, claimant could choose to accept a severance package. Under that option, claimant would receive one week of pay for each year of service, plus one week of pay for every year over 15 years of service, plus 15 percent of her current annual salary in exchange for a waiver of liability. Claimant accepted a severance package that provided her with periodic payments. She continued to receive her regular paycheck on employer's scheduled payday and also continued to receive her health and dental insurance benefits under the employees' group coverage. In addition, she remained eligible to participate in the employer's 401k plan. Claimant no longer provided services for employer after January 13, 1995, but employer kept her on its payroll. Employer did not, however, deduct amounts for Workers' Compensation coverage from claimant's paycheck.

An administrative decision by an authorized representative of the director of the Department denied claimant's initial claim for unemployment benefits on the ground that claimant left work without good cause because she could

have continued to work. ORS 657.176(2)(c);[1] OAR 471-30-038(4). After a hearing on the matter, the administrative law judge (ALJ) also concluded that claimant had voluntarily left work without good cause, and therefore, affirmed the administrative decision. In reaching its decision, the ALJ made the following additional findings:

"(9) The claimant had the option of transferring to jobs at Montgomery Park in Northwest Portland, but decided that it was too far to drive. (10) The claimant could also post for other job openings. (11) The employer has, and continues to have, openings in their Beaverton loan service center."

Claimant then appealed to EAB, which set aside the decision of the ALJ, holding that claimant had not left work without good cause, and therefore, was entitled to receive benefits. Specifically, EAB looked to the definition of "work" contained in OAR 471-30-038(1)(a),[2] and concluded that claimant was not disqualified from receiving unemployment benefits "[g]iven the ongoing relationship between claimant and employer." In its decision, EAB explained:

"To determine if claimant is disqualified from receiving unemployment benefits as a result of her separation from work, we must first conclude that a separation from employment has occurred. In this case, we conclude that no separation has occurred and, as a result, claimant is not disqualified from receiving unemployment benefits under the provisions of [the statute setting out the grounds for disqualification]."

---

[1] ORS 657.176 provides, in part:

"(2) An individual shall be disqualified from the receipt of benefits * * * if the individual:

"* * * * *

"(c) Voluntarily left work without good cause, or

"* * * * *

"(e) Failed without good cause to accept suitable work when offered."

[2] OAR 471-30-038(1)(a) provides, in part:

"As used in ORS 657.176(2)(a), (b), and (c) and sections (1) through (5) of this rule the term *'work' means the continuing relationship between an employer and an employee.* * * * [T]he date that an individual is separated from work is the date the employer-employee relationship is severed." (Emphasis supplied.)

In reaching its decision, EAB made no findings as to whether employer had other job openings that claimant could post for or readily transfer to. The Employment Department then sought reconsideration, which EAB denied. We review EAB's conclusion for errors of law. ORS 657.282; ORS 183.482(8).

The Department argues that EAB's conclusion is clearly erroneous because it conflicts with the statutory scheme. Specifically, the Department argues that "under EAB's interpretation, claimant is entitled to unemployment compensation even though, in the EAB's view, claimant is still employed."

Under the unemployment insurance statutes, ORS 657.005 *et seq*, eligibility to receive unemployment benefits is limited to those individuals who are unemployed. ORS 657.155. Under that statutory scheme, an individual is either employed or unemployed. *See* ORS 657.100. Here, EAB could properly conclude, under OAR 471-30-038, that there was a continuing employer-employee relationship. EAB failed to explain, however, why claimant is entitled to receive benefits when she has a continuing employment relationship with employer, and therefore, is employed. It is well established in Oregon that an agency must fully explain how its findings lead to the conclusion that it makes. *Drew v. Psychiatric Security Review Board*, 322 Or 491, 500, 909 P2d 1211 (1996). Because we cannot determine the basis for EAB's award of compensation, we remand for reconsideration.

Reversed and remanded for reconsideration.